Good morning. May it please the court, my name is William Janago. I represent the plaintiff's appellants in this action. I'd like to reserve three minutes of my time for rebuttal. And Judge Bailey, you did pronounce the name correctly, it's Ann Chae. Congress did not expressly or impliedly preempt any of the five state laws that are the basis for the plaintiff's claims. And the defendant's arguments to the contrary are really based on recasting the conduct that they say we are complaining about and creating a conflict where there isn't any. The scope of the preemption doctrine is laid out in the court's prior decisions. There's either express preemption or there's implied preemption. There's no express preemption here. It was not argued in the district court, and so it's waived, first of all. In fact, the Department of Education conceded that there was no express preemption, and Sally May did as well. They try to argue that on appeal because they realize that, as this court has said before, where there are express preemptions by Congress carving out specific areas in which you cannot enforce state laws, it is a very strong indication that other areas are not preempted. So there's no express preemption. There's no field preemption. Counsel? Yes, Your Honor. Counsel, Judge Gould. Good morning. My comment, good morning, is I think if you could spend significant time on conflict preemption. That's exactly where I was going, Judge Gould. Okay. I agree. Express preemption is not here. Thank you very much. And neither is field preemption. The only thing they have is direct conflict preemption. And as the Supreme Court has said, that is a very demanding defense. It must be impossible to comply with both state and federal law. And that's not true here when you look at the claims that we have in our complaint. First of all, if you look at the UCL, it's got three subclaims. The first subclaim does not say that it's wrong to charge what they refer to as daily simple interest. What it says is that Sally May's billing statements, which we've put in the exercise record at page 131 and 132, are misleading. And that's what the problem is here. You can charge daily simple interest under the UCL claim. What you can't do is you can't do it fraudulently or deceptively. So there's no conflict there. And they're certainly not obligated to do anything misleading. And it's not based on any of the mandatory prescribed forms. The second subclaim. Let me stop there, if I may. Yes, Judge Arnold. The basic documents you're complaining about is the billing statement? Is that correct? As to the UCL claim, we're complaining about the billing statements and the payment methods. And if the court looks at page 132 of the excerpt of record, one of the things that they tell you, I'll read from it, is, please remember that accrued interest is reflected in your payment amount. They are saying to you that this monthly payment includes all of your accrued interest. Well, it doesn't. It depends on the day that it gets there. And this is affirmatively misleading. And so that's why there's no conflict here. They can still use everything the DOE is telling them to do. But what they can't do is send out these misleading billing statements. And very importantly, the billing statements and the payment methods and the other documents that are based with that claim are not at all regulated. They're proprietary forms that Sallie Mae uses. As to the second subclaim for the UCL, and this is sort of charging people interest before it's ever owed, what they do is if you have, for example, a 10-year loan, which is 120 payment periods, they make the first period 60 days. They take 30 days of that interest. They add that to the principle without telling you, then amortize that increased amount. They bake in 30 days of interest into the principle, and you never see it anywhere in the documents. In fact, we didn't even know that that's what they were doing until we got to discovering we saw their formula. And that's precisely what they're doing. And so to say that that claim is sort of preempted by a conflict, not only is it not in conflict, the regulations, and this is 682.202b2, specifically say, this is the Department of Education's own regulations, you cannot capitalize interest until it's accrued, until it's owed. Well, they're violating that regulation, and that is the basis for the second claim. And we have evidence to prove that. We're just at the preliminary stage. We never got to trial because we were preempted. But there's no conflict preemption there because it's not impossible to do both. Same thing with the last subclaim. It's impossible to do both of what? Well, the conflict preemption, Dr. Judge Bader says, the parties seeking preemption would have to say it's impossible to comply with federal law and state law. What we're saying the state law says here is you can't be deceptive and misleading. You can't secretly bake in 30 days of interest so that everybody's payment is higher. The debtor can pay the first payment and not accrue any interest on it? No, Judge Bader, because they've already calculated the monthly amount based on that additional 30 days of interest without you ever knowing it. So everybody is damaged. It's just a question of how much. You just never know that your monthly amount has actually been increased because it's baked in. So it doesn't matter. You can mitigate a little bit if you pay. Is that because the first payment is not due for 60 days? Is that? That's the way they accomplish it, but it's not because of that. The reason that happens, Judge Hart, is because they add 30 days of interest back into the principle. They could bill you for 60 days. I understand. I got your point about that. But what I'm trying to understand is exactly what they do. It's the first payment is due in 60 days? That's right. Okay. So they assume that you will pay on the 60th day, and so they treat it like a monthly payment. So they take 30 days of interest, add that, let's say $10,000. They'll add that 30 days of interest into the $10,000, amortize that amount, but only show that your loan amount is $10,000, which is all that you've borrowed, of course. So it's actually baked in. That's where they charge you interest before it's ever accrued. But you have the money. You do have the money, Judge Harper. What you don't know is that you would not have to pay as much. You didn't want to borrow $10,000 plus. You wanted to borrow $10,000. They're actually causing you to borrow more money. They could give you the option. Suppose that the borrower pays the money two days after he got the loan. What would be the effect of that? If they paid the monthly payment amount, they would still be damaged because that amount is based on a sum greater than what they borrowed because they are amortizing it not on your principal, not on the amount that you borrowed, but on the amount that you borrowed plus 30 days. And that's why it's such a pernicious harm because everybody's got it. So it's Judge Gould. Yes. But aren't they not charging the interest for that first 30 days? It's being added to the principal, but there's no separate interest payment for that, right? That's correct, Judge Gould. They just add it in and they don't tell you that they've done that. Well, I understand there's issues in terms of whether it's misleading if they haven't told them that. But still, in terms of economics, you couldn't expect the lender to give the money to the borrowers and have no interest charged for the first 30 days, right? That's correct, Judge Gould. And as we readily admit, they could charge them 60 days of interest. But what they can't do is, in effect, increase the loan amount and extend it to 121 months because that's what they're really doing here. You contract for a 10-year loan. You do not contract for a 121-month loan. So you're right, there is the economic value of the money, but they didn't contract to get the additional month of interest. And so they can't accomplish that fraudulently by putting it back into the principal when the consumer or the borrower has never gotten that money. And so that's where the harm is. You're right, they can charge for the 60 days of interest, and if they went ahead and did that and didn't take it in, we wouldn't have a claim. But the point is, if they don't do that, they do it fraudulently. So were there federal regulations from the Department of Education or otherwise that permitted them to wait for 60 days for the first payment? Judge Gould, Section 682.209 says that the first payment is due within 60 days after the date of the loan is fully dispersed. So there is a regulation which allows them to have up to 60 days. That's written in a way that's supposed to benefit the borrower so they don't have to pay right away. But in fact, it does not authorize them to do what 202 prohibits, which is charge you interest before it's actually owed because that's the way they're using the 60-day first period. They can use the 60-day first period, but that's not what our complaint is. Our complaint is not about the 60 days. Our complaint is about how they double in the interest for the 60 days. So you would say that the first 60 days the person doesn't pay any interest? No, Judge. The person would pay 60 days of interest, but what they wouldn't do is they wouldn't take out a loan for 30 days of interest, which is what they're really doing. They're saying, okay, we're going to defer 30 days of this interest because we're going to add it back into the principle. And the formula in the experts report really explains how you sort of go through the analysis, but they take 30 days of interest, let's say the $10,000 example again, and they then say $10,000 plus 30 days. Now, that's not just getting the time value of 60 days of interest. You have to pay for the money. You've got it for 60 days. That's fine. But what they're doing is they're increasing your monthly payment because they're increasing the amount that you supposedly borrowed when you didn't. They're, in effect, making a decision, Judge Gould, for you without ever – without really sort of misrepresenting to you that it's just one payment period, but they're making a decision for you, okay, I want to take out another loan for 30 days of interest because I don't want to have to pay until 60 days. Let me ask you, if the creditor pays on the 29th day, the first monthly statement, do they still put the 30-day interest into the principal amount? Absolutely, Judge Bea. And if you look at the experts' report at page 14 and page 17, he explains how they calculate the monthly payment amount based on the increased figure. So if you pay on the 29th day, you're not as harmed as you pay on the 16th day, but you still are harmed and have a monetary loss, and you're paying more than you need to for the money. Counsel, most – I don't know exactly what the record here shows, but on most mortgages with banks, if there's an early prepayment, let's say they didn't have to pay until day 60, but they made a payment at day 30. The amortization may have been set up assuming no payment until day 60, but if there's an extra payment at day 30, it reduces the principal amount of the loan at the end. So you get done a – you get – if they made a payment after 30 days and then made another payment after 60 days, that would have some effect on the principal owing. And I guess they have computers that recalculate, you know, what's going to interest in principal. But I don't know what's in the record here, but are you saying that the government could not, to encourage this kind of lending, just provide that we're normally going to amortize loans assuming an initial payment after 60 days? No, they could certainly do that, Judge Gould, but what they couldn't do is make the decision for you that they are going to increase the principal amount, which is what they do. They make the assumption that you are borrowing more than you actually have. And you're right when you pay early. And, in fact, our plaintiffs actually didn't wait until the 60th day. They paid a little bit early. They mitigated their harm, but because the – and this is explained in the experts report – because the monthly payment amount has been already calculated, you never entirely can mitigate all the harm because it is in the first – if you make a pre-payment, right? That is correct, Judge Gould. But compared with someone who has not had their principal increased, if you pay it off at the same time, you will still pay more interest. And the expert explains that. And the point really is here, we're talking about conflict preemption. So the question is whether or not it's impossible to comply with both. And there's nothing in the federal regulations that say you must amortize the loan by increasing the principal amount secretly. So there's no conflict preemption. I mean, there's a whole question of proof that we would present at the trial. But for present purposes, there's no conflict preemption. And there's no – even as to the summary judgment, there's no basis for the defendant's claim because they say they're authorized or required to do this. They're not. They're actually prohibited from doing it by 682.202B. I see that my time is about to expire, and I'd like to save some time for rebuttal. I'll give you two minutes. Good morning, Your Honors. Julia Strickland. And I'm going to take 10 minutes and allow counsel from the Department of Education five minutes of the argument. I'd intended to start with the interest calculation, and let me come to that. But since we've ended with capitalization or what the plaintiffs allege is effective capitalization, I think their characterization says it all. Because if it were real capitalization, they wouldn't call it effective capitalization. And the issue of capitalization doesn't need to be looked at necessarily through the lens of preemption. What Sally Day does is absolutely legal. It is absolutely endorsed by the notes. And really, with all due respect to plaintiff's counsel, what has been just said in this court is a fiction. I'm trying to be as polite as I can possibly be. Here's where the analysis starts. 34 CFR 682.202B defines capitalization. And it defines capitalization in exactly the way that we would all understand it in this courtroom. Capitalization means that you add to principle. You take interest and you add it to principle, thereby increasing the principle over the life of the loan. Even in plaintiff's own expert report, that is not what happened here. And I would direct your Honor's attention to the examples in the expert report, which relate to the interest calculation that they challenge here, what they call PDPI, another made-up term. Nowhere on Google, but that's their acronym for Daily Simple Interest. But if your Honors look at Tables 4, 5, 6, and 7, which are their experts' calculation that purports to show capitalization at sealed excerpts of record pages 10 through 13, you will see that as a matter of fact, there is no capitalization. And the way you know that is very elementary. And it's laid out in our brief at pages 26 and 27, which is there is a right-hand column that shows the balance. The principle balance is ever declining. It never increases. No capitalization. Very simple. So what do we have here? But does it start at a figure higher than the loan amount? It does not, Your Honor. And that's why, notably, the plaintiffs call What about the 30 days of interest that counsel was talking about, which is added to the capital? No, it isn't added to the capital. That's exactly the point. And that's the fiction that they're engaging in. If your Honors look at the chart that their own expert generated, four different variations on the simple interest chart, it's never added to the principle, not a single time. What happens is, in fact, exactly as Your Honors observed in the questioning, what you have is because you don't need to make your first payment until somewhere within the first 60 days, the payment is deferred, and that's for the borrower's convenience, frankly, because it gives a student who's graduated an opportunity to get on track in terms of making their loan payments. There's nothing that forbids them from making an earlier payment. They can pay on day 1, 2, 3, 5, 26, or the like, and avoid the interest. What you have is exactly what Your Honors recognized, which is you have 60 days of interest or 57 days of interest rather than 30 days of interest. And so what happens is the interest is front-loaded, in essence, so the first payment is more heavily allocated to interest than to principle. But never is there capitalization, not a single time. Never is there capitalization as you've defined it from the regulations, that is, the addition of interest to principle. As I define it, as economists define it, as the dictionary defines it, capitalization is adding to principle. That doesn't happen here. And their own experts' charts are the best example of this point. Additionally, we are directed by statute to defer the first payment to not later than 60 days. So there's absolute statutory authority for what is done here, 60 days from the funding date. Sometime in that time period is when you are allowed to set the first repayment date. It is also fully disclosed in the notes, and all of these citations are in our brief at pages 25 through 27 to the record. But, for example, the Coakley note says, quote, I will pay all interest that accrues on this loan commencing from the date of disbursement. As Your Honors observed, no interest-free ride. You have to pay interest from day one. And, quote, my first payment will be due within 60 days of disbursement. That's the agreement between the parties, between the lender and the plaintiff. If he pays earlier than 60 days, then there is less of interest front-loaded. Absolutely. Absolutely. And as I said, you can pay, and I think more of the principle obligation is charged. Right. And there's no prepayment penalty by law. And by the notes. So plaintiffs are engaging in extremely elaborate fiction here, and the most telling fact is that they call it effective capitalization rather than capitalization, because they can't, in good faith, stand up before the court and say it is, in fact, capitalization, because it's not, and it's not as defined by statute. Now, I'd like to turn to what is really the bulk of the claim here, which is the issue of using simple daily interest. And I think it's important to remember, when looking at this case, that we're talking about loans that are loans subsidized by the U.S. government. This is a national program. There are millions of borrowers involved, thousands of lenders involved. And so, as you might expect, consistent with the statute, people follow the rules, which is the department mandates the forms, mandates the notes, mandates the content of the disclosure statement. This is all in the record, and it's all in our briefs. We charge interest the way the department charges interest. We charge interest and get paid interest in exactly the same way. The department charges interest to direct borrowers the way we charge interest. It is all common. It is all done the same way, and that is by statutory and regulatory mandate. Plaintiffs talked about the billing statements. I invite your honors to look at the billing statement. Tellingly, what he read to, what plaintiff's counsel or appellant's counsel read to your honor, was not part of the billing statement. It was part of a coupon book. The billing statement really is innocuous and says nothing. It just says, this is how much your payment is, and this is when it's due. And the billing statement necessarily incorporates in that calculation exactly what is in the documents that are provided to the borrowers, including the disclosure statement, to which I'd particularly like to direct your honors' attention, because the disclosure statement expressly discloses that, quote, if payments are made earlier than scheduled, less interest will be paid than contemplated by the schedule. And if payments are made late, additional interest will accrue. That is a full and accurate disclosure of the daily simple interest calculation. And all of this is cited in detail in the brief. With respect to express preemption, I hesitate to disagree with Judge Gould. On the other hand, I must say that, in fact, on the daily simple interest issue, there is, in fact, express preemption. And 20 U.S.C. 1098G absolutely goes to this point. It says, and I quote, loans made, insured, or guaranteed pursuant to a program authorized by the HEA, quote, shall not be subject to any disclosure requirements of any state law. That is about as express as it gets. That is express preemption, and the argument was not waived. Why do I know that? Because in plaintiff's own reply brief at page 7, they acknowledge that Sally May made the point below that had there been a disclosure claim asserted, that claim would be expressly preempted. So I invite your honors, look at page 7 of their reply brief. They quote from our papers where we reserve the right on an express disclosure claim, an express preemption of a disclosure claim. Now, why are they arguing waiver now? That's because they have changed their theory with every single brief they have filed in this case, including the arguments before the court today. When they were before the court below, they argued that their issue was the practice. The practice. They objected to the practice of charging daily simple interest. What has happened is on appeal having lost below, they have modified their claim, and the way in which they've modified their claim, and in fact they've modified it several times, but I think the clearest articulation of their claim as it now sits before your honors is at page 2 of their reply brief. And now what do they say? They say plaintiffs do not contend, do not contend, that California law precludes Sally May from charging interest based on a daily rate between receipt of payments, or daily simple interest. Instead, they say, and this is a direct quote, that Sally May, while using their made-up belief PDPI method, daily simple interest, fraudulently and deceptively misleads borrowers to believe that interest is being charged based on a monthly disclosure schedule. Counsel, Judge Gould with a comment. Earlier you had said that you wanted to leave five minutes for the Department of Education, and I see we're down to three and a half minutes, so it's probably up to you, but you better clear with Judge Bea if you want to take more time. With that, let me just say one more thing, which is turn to late fees, which is the third category. Okay. The late fees, again, specifically authorized by both the contracts and the regulations. We've briefed that. You need only look at the uncontroverted facts. Plaintiffs do not challenge the disclosures. And, again, 1671A is not applicable because this is specifically authorized by statute. I would say on the issue of preemption, at the end of the day, preemption is always a thorny issue. We recognize that. The Court doesn't need to go there because all of these claims fail on the merits. So matched up against California law, against the law that is asserted in this case, they lose on all five claims regardless. You would rather consider the merits than the preemption arguments. Your Honor, either way, we would contend that we win. But I think that sometimes the straightest path between two points is straight. And that may be the path here, but I think we win in any event. Since we're giving counsel an additional two minutes, we'll give you your original five minutes. Thank you, Your Honor. Coming all the way from Washington. May it please the Court. Sydney Foster for the United States. The preemption issues in this case boil down to the main question they boil down to is whether or not the simple daily interest method is, in fact, required by the statute and the regulations, or whether instead the statute and regulations also permit the use of the method that the plaintiffs refer to use. Which is? Which is hard to describe, and I don't think they give it as a particular method. I think they want their couple different variations on what they might mean. It's one thing that is clear is that they want interest to be calculated not according to how much interest is actually accrued between payment dates, according to the principle that rather the interest will be calculated according to some kind of hypothetical schedule where we assume that payments were made on the dates that they were due. So that the interest that would accrue between in a given payment period would be for the 30 or 31 days that were between, that lapsed between the two scheduled payment dates. Can I try to paraphrase it? Is it, is it, it's an installment method, is it not? Based on the average interest for the 30-day period? It's, it is an installment method, as is the simple daily interest method. And it's, it's not, it's not, it's a little unclear actually how they, how they figure in the different. How do they get the installment? The installments are, at the beginning, at the beginning, they, everything looks the same. The loan is amortized, assuming that payments will be made in accordance with the payment schedule and so forth. And they assume that the interest will be calculated, you know, on a daily basis and so forth. Things start to shift. But they average it then, don't they? Isn't that the idea? But they average the. . . For the, for the 30-day period, don't you take the 30 days and figure out what the interest would be and then average that out. Anything, you pay at any time within that period. Right, that's, that's correct. Whereas under the simple daily interest method, if you were to say pay early, then you would be paying interest on. . . You get credit for that. Exactly. You pay. . . The installment method, you don't get credit for it. Exactly, exactly. That's exactly right. So the question of whether or not the simple daily interest method is required or whether instead plaintiff's method is also permitted. . . Since you come all the way from Washington, from the Department of Education, tell us why, if you would, the method that the regulation calls for is preferred over what the plaintiffs have preferred, have suggested here. Okay. Well, as a policy matter, it's the standard. When the term simple interest is used, as the Federal Reserve Board has stated, inherent in that definition is that interest will be calculated according to the daily simple interest method. I think part of why that is is that that way the interest is calculated, that you pay over the life of the loan is the actual interest that was accrued. You take, look at each day and calculate the principal that was outstanding on that day and multiply it by the daily interest rate. You end up paying. . . The value of the money. Exactly. You're paying the value of the money, and in addition, it's the Department's position that this is actually favorable to borrowers because it advantages students who end up paying their loans early. It disadvantages borrowers who end up paying late. That is true, but to assume that all borrowers or most borrowers are going to pay late is not an assumption that the Department believes is fair. The shift is in the advantage to the person who pays early as distinguished from the disadvantage to the person who pays late. Exactly. Exactly. That's the choice you're making. Exactly. The person who counseled the Judge Gould with the question, the person who pays late has had the use of the money for longer, right? That's correct. That's corrected. Okay, so I don't know if you would really say in economic terms that they're disadvantaged if they pay a larger interest amount. Correct. They're disadvantaged as compared to the plaintiff's method where they would get that money for free essentially, but that's correct in terms of just that they're getting what they pay for. They're being charged an extra, the appropriate amount of interest. Counsel, could you please address one issue that's been of concern to me, and it's this, you know, and you might be the right person to address it, being from Washington, D.C., and the Department of Education. You know, if each of the 50 states could prescribe, you know, regulations that impact the format of the lending that's made to students here, would that have any effect, would that have any impact or effect on the federal program? In other words, are there obstacles, would it create obstacles to what the government's trying to do that raise preemption issues? Judge Gould, in response to your question, I'm not sure precisely what you mean by the regulations pertaining to the format to the extent that you're saying that the states might prescribe regulations about the method of interest calculation that would be used, whether that would be simple daily interest or some other method. It's definitely the case that that would pose an obstacle to the accomplishment of the objectives of the federal loan program. Take, for example, the late fee. As I understand it, we have a federal regulation that permits charging of a late fee in addition to interest. Correct. And we might have some states that would say, wait a minute, if you're going to charge interest for all those days, you can't also charge a late fee. Right. The federal regulation seems to say that you can. Correct. So, I mean, is there a departmental or federal objective that's underlying this? Well, it's two things. But first of all, under the governing case law, under straightforward principles of conflict preemption, when federal law expressly authorizes a particular action, state law that prohibits that action is preempted. So, first of all, just under fidelity federal savings and loan and so forth. But in addition, I mean, part of why there are uniform terms including, well, actually this is going to your late fee question in particular, part of why the agency has authorized the imposition of late fees is that one of the purposes of the program was to encourage lenders to get involved in the program so that there would be sufficient funds available for individuals to pursue higher education who might not otherwise have access to that education. And so the late fee provision, authorization provision, along with several other provisions, is there in part to make the program attractive to lenders to encourage their participation so as to effectuate the goals. With respect to the simple daily interest method, I just want to emphasize that Congress has prescribed in excruciating detail precisely what amount of interest it is that each loan will bear. And Section 1077A goes through and makes clear that for any given loan, any two students who have the same type of loan are going to be paying the exact same amount of interest on any given day. It would not make sense for Congress to have gone through that level of detail to specify precisely how much interest everyone would be charged without assuming that there was a particular method that it had in mind. And there's plenty of evidence in the statute and in the regulations that the method that they had in mind was the simple daily interest method, which is the method that the Department uses when it calculates its own interest payments, subsidies. Does the Federal Government tell lenders what interest rate is to charge? In Section 1077A lists a number of requirements. Yes, that's all dictated by statute and regulation. Can't exceed six percent, isn't that what it was? It all varies depending on the particular kind of loan, whether it's a consolidation loan, and whether a Stafford loan and so forth, and also depends on precisely when it was made. But there are many, many sections. So there's no competition between lenders on price? There's no competition with respect to the interest rate. That's correct. If the Court has no further questions, we would ask the Court to affirm. Thank you. You have two minutes, Mr. Negar. Judge Baird, could we please give the appellant an extra two minutes beyond that? Because I took up so much extra time. You have four minutes. Thank you very much. I appreciate that. What's very, very important here is that there is not a plaintiff's method and a Sallie Mae method or government method. What we're saying is not you must charge interest in a particular manner. What we're saying is that you have to follow the contract. And if you have a contract that is written for what is per diem payment interval interest, which is a descriptive term. It's not some acronym we made up. It describes what they do. It's daily interest per diem by payment interval. That just describes what it is. They call it simple interest, daily simple interest, simple daily interest, which they never define and which misleads the borrower. What we're saying, Judge Gould and Judge Hart and Judge Baird, is you have to follow the contract. And they don't do that here. And remember, I understand the concern about 50 different states having interpretations of the contract that are different. However, the alternative to that is to say you don't have a right to sue under the contract. That obviously can't be what Congress meant to do, is to take away the right to sue under the contract. The answer to that is you go to federal laws, choice of law. You don't preempt the cause of action. You look at the contract, and you interpret it according to federal law. It's actually, if you look at the Browning case, it's a conflict of law preemption question, which they didn't raise before, and which they've raised. But you don't run into 50 different states. You actually use federal law, and you allow people to sue on the contract. So that's something very important, and that's all we're asking for in the contract claim. On the billing statements, what our complaint there is, Judge Hart, is they say one thing, but they do something else. And that's what the problem is. You can let people benefit economically by paying earlier, but don't mislead them by giving them these billing statements and payment coupons. And remember, it's both the billing statements and the coupons that say this is the monthly amount you owe, and if you pay 15 days afterwards, you owe a late fee. We have consumer evidence in the record from the borrower saying they all understood that, meaning that as long as they paid by the 15th day, they wouldn't be charged any extra interest. And that is in evidence in the record. People are misled by that. So we're not saying that you have to use one method or the other. What we're saying is that you can't mislead people, and that's what they're doing here. And they're not doing it according to the prescribed forms because we're not trying to get them to do something different. We're saying they're billing statements. Fifteen days late, you pay a late fee, you get 15 days free interest? No, that's not – Is that what your people really believed? No, no, Judge, not at all. What they mean is that – You're spending money, right? You've got to pay the rent. You actually do have to pay the rent, but what you don't have to do is pay for the interest twice. You can charge a late fee. A late fee is not free interest. It's supposed to be payment for the administrative cost of servicing a loan, which is late payment. Precisely, Judge Bale. What you're saying is if you pay a late fee, a late fee happens to be $10, then you don't have to pay interest for the 15 days that you're late. No, Judge Bale, what we're saying – No, we're not saying that. You can charge a flat late fee. What they're doing is their late fee is a percentage of the money, so it's actually calculated based on the use of the money. We can say you can pay a late fee that's $10 or $15. That's okay. What you can't do is charge additional interest, which is what they're doing. They're charging as a percentage of the amount of money, and that's what the problem is because it's punitive and non-compensatory. Percentage of the amount of money per annum? Is that what you're saying? That's correct. As a late fee. And that's what they're charging as the late fee. So that's for use of money. That's not to punish you or to deter you not to make the payment. You're already being charged for use of the money by the interest, and then the late fee is supposed to – You're saying your people thought that by simply paying the late fee, they wouldn't have to pay interest for the 15 days. No, no, no, no, no. No, that's not what I meant at all. What they meant is that they thought that they were paying on an installment loan, that you pay the amount every – and that the loan is not going to cause you – I shouldn't have said interest. The loan is not going to cost you any more as long as you pay by the 15th day. That's what I meant to say. So you have a 15-day grace period. That's exactly right. That's what they were meant to believe, that there was a 15-day grace period. And they think that they have an installment contract, and that's what the problem is here. I really want to get to the effective capitalization claim, and I see my time is running out. But the reason we call it effective capitalization is because when you say capitalization, you actually show the increase in principle. You would take the $10,000, and you would show the increased amount. If you look at the expert's report on page 14, he explains that if you look at the monthly payment amount here, there's only one way you can get to that. And the only way you can get to that monthly payment amount is if you increase the principle. So they do it secretly, and they do it deceptively, and that's what the problem is here. Counsel, your time isn't running out. Your time had already passed. That clock's going up. That means you are over your time, which doesn't bother me, but I think you do have to wrap up. And what I wanted to say was this, because I didn't recall this in the briefs. Are you expressly inviting us on the contract claims to apply not state law, but some federal common law, which I guess after Erie can only be done in certain rare kinds of circumstances? But is that what you're saying you want us? Are you saying you want us to apply a federal common law to assess your contract claims? And where is that in your briefing? It is in our brief, actually. It's in the reply brief where we say alternatively, if the court is concerned about applying state law and having 50 different states with conflicting interpretations, you can then use federal common law. That's in the Flores case, Judge Goldberg, where you wrote an opinion about federal common law and how it comes up where there's going to be a conflict. If you look at Keams and Brannon, Brannon is a case that I mentioned where they talk about conflict of law preemption, and what they say is that if you think federal law should be the choice of law here, you're supposed to raise that below. They never did that, but I'm just saying if the court is concerned about 50 different states interpreting this, the answer to that is not to say you can't sue on the contract. The answer to that is to say you use federal common law, which is exactly what, Judge Goldberg, you explained in the Flores case. And, again, if you look at Brannon and you look at Keams, which are the two cases, this is where I've decided, HEA cases, it's manifestly evident from those two cases that are claims which go to conduct that is not required or authorized by the statute or not preempted. That's the same basis for their merits defense, that it's authorized or required, and that goes as well. And, importantly, before I sit down, the Department of Education notably does not claim that the baked-in interest claim is in any way preempted because that is actually prohibited by the regulations. And that is, as I heard it argued, is really a question of proof, and we need a trial on that, because I strongly, strongly object to their characterizations of what I'm saying here as fiction, and I would invite the court to look at page 14 of the sealed records of record. I thank you for the additional time. Thank you very much. The case of Che versus SLM will be mark-submitted. And that brings us to the end of the calendar, and we are in adjournment until tomorrow morning at 930 a.m. Thank you. Okay, thanks. See you in conference. All rise.
judges: Hart, Gould, Bea